# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

UNITED FINANCIAL CASUALTY  
COMPANY,

    Plaintiff,

vs.

NORTHERN GRAVEL &  
TRUCKING, LLC and ALAN OSBORN  
BAXTER,

    Defendants.

3:16-CV-00291 JWS

ORDER AND OPINION

[Re: Motion at docket 23]

## I. MOTION PRESENTED

At docket 23, Defendant Northern Gravel & Trucking, LLC (NGT) filed a motion to stay the declaratory judgment action brought by Plaintiff United Financial Casualty Company (UFCC). UFCC filed a response in opposition to the stay at docket 37. NGT filed its reply at docket 44. Oral argument was not requested and would not be of assistance to the court.

## II. BACKGROUND

NGT is a trucking company based in Anchorage, Alaska, that provides, among other things, hauling services to its customers. NGT contracted with Quality Asphalt Paving (QAP) to perform hauling services for QAP's 2014 road construction project on the Parks Highway. On September 9, 2014, NGT employee Wes Byers drove a load of hot asphalt to the construction site with a NGT truck that was insured under NGT's

-1-

vehicle insurance policy with UFCC (the Policy).  After dumping the asphalt, Byers drove to the end of the job site in order to turn the truck around.  Byers had to back his truck onto a side road where QAP employee David Ferns (Ferns) was performing surveying tasks for the construction project.  Ferns believed that Byers drove the truck too close to him during the turn and confronted Byers about his driving.  Byers got out of the truck.  Ferns was upset, and a verbal confrontation ensued.  After a short amount of time, Byers returned to the truck.  Meanwhile, another NGT truck driver, Alan Baxter (Baxter), happened to be driving a different NGT truck along the Parks Highway past the construction site on a job unrelated to QAP's construction project.  He observed the interaction between Byers and Ferns and saw Ferns follow Byers to the truck wielding a hammer and, at one point, step up onto the steps of the truck's cab.  Baxter then pulled off the side of the road and got out of his truck to see if he could break up the dispute. According to NGT's Answer and Counterclaim, as Baxter approached Byers' truck, he lost his right shoe and tripped and fell into the back of Ferns.  Ferns was knocked to the ground and sustained substantial injuries.  NGT admits that "Baxter's decision to approach the confrontation was completely unrelated to his employment duties with NGT and he was acting [sic] outside the scope of his employment."[1]

The State of Alaska prosecuted Baxter for assault.[2]  On May 13, 2016, Baxter was found guilty and convicted under AS 11.41.230(a)(1) for recklessly causing physical injury to another person.  Baxter has appealed his conviction, and the appeal is currently pending.

Ferns subsequently filed a tort complaint in Anchorage Superior Court against Baxter and NGT.  His claim against Baxter is for negligent and reckless assault, and his claim against NGT is based on its vicarious liability for Baxter's conduct.  NGT tendered Fern's claims to UFCC asking for a defense and for indemnification.  UFCC responded

---

[1]Doc. 16 at p. 11.

[2]*State v. Baxter*, 4NE-14-00150CR.

with a reservation-of-rights letter offering to provide defense counsel for both NGT and Baxter as to the tort action. UFCC then filed this federal action against NGT and Baxter asking that the court issue a declaratory judgment confirming that UFCC is not obligated to defend or indemnify NGT and Baxter under the Policy.

## III. STANDARD OF REVIEW

The Declaratory Judgment Act requires that a declaratory judgment action present an actual case or controversy under Article III of the Constitution and be consistent with statutes governing the jurisdiction of federal courts.[3] "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."[4] Such a determination is discretionary. A court determining whether to exercise its discretion to move forward with a declaratory judgment action should first consider the non-exclusive factors set out in *Brillhart v. Excess Insurance Co. of America*[5] and its progeny.[6] The *Brillhart* factors include: (1) avoiding needless determination of state law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation.[7] Other relevant factors include resolving all aspects of the controversy in a single proceeding if possible; avoiding intervention unless the declaratory action will serve a useful purpose in clarifying the legal relations at issue; avoiding procedural fencing or permitting one party to obtain an unjust res judicata advantage at the expense of the other; avoiding entanglement between the federal and state court

---

[3] *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-23 (9th Cir. 1998).

[4] *Id.* at 1223.

[5] 316 U.S. 491 (1942).

[6] *Dizol*, 133 F.3d at 1223, 1225.

[7] *Id.* at 1225.

systems; and avoiding jeopardizing the convenience of the parties.[8]  "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court[,]" but "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief."[9]

## IV.  DISCUSSION

For this declaratory judgment action, there is no parallel state proceeding with the same parties and issues and therefore no presumption of abstention applies here. Indeed, NGT does not ask the court to dismiss the action, but rather requests a stay pending the resolution of the state court action.  As to the three primary *Brillhart* factors, NGT concedes that there are no state law issues to resolve here and no forum shopping on the part of UFCC, but it argues that a stay is warranted given the duplicative factual issues that could arise in the event this case were to proceed in tandem with the state tort case.  It also contends that a stay is warranted because the state case will settle all aspects of this controversy and because a stay will prevent prejudicial collateral estoppel.

### A.	Duplicative litigation

The resolution of this federal declaratory judgment action will require the court to determine if there is at least one cause of action in Ferns' state complaint against NGT and Baxter for which there is a possibility of coverage under the policy or, if the allegations in the complaint do not fall within the policy's coverage, the "true facts" of the incident at issue are nonetheless within, or potentially within, the policy's coverage and are known or reasonably ascertainable by UFCC.[10]   The issues raised on the face

---

[8]*Id*. at 1225 n.5; *see also Nat'l Chiropractic Mut. Ins. Co. v. Doe*, 23 F. Supp. 2d 1109, 1115 (D. Alaska 1998).

[9]*Nat'l Chiropractic*, 23 F. Supp. 2d at 1116 (internal quotations omitted).

[10]*Alaska Pac. Assur. Co. v. Collins*, 794 P.2d 936, 945 (Alaska 1990); *see also Makarka ex rel. Makarka v. Great Am. Ins. Co.*, 14 P.3d 964 (Alaska 2000) ("The potential for coverage

of Ferns' state complaint are: 1) whether Baxter negligently or recklessly caused him injury; and 2) whether NGT is vicariously liable for Baxter's actions; that is, whether Baxter was acting within the scope of his employment. UFCC's complaint in this case asserts that there is no possibility of coverage with respect to Ferns' state court complaint, providing three reasons in support: 1) the injuries and damages allegedly sustained by Ferns did not arise out of the ownership, maintenance, or use of an insured vehicle as required under the Policy; 2) Baxter is not an insured under the Policy because the injuries claimed by Ferns did not arise out of Baxter's permissive use of an insured vehicle; and 3) the underlying tort suit does not involve an accident and expected or intended injuries are excluded from coverage.

The court will first turn to UFCC's third basis for this declaratory judgment action: the Policy's expected and intended injuries exclusion. Normally, the court's determination as to whether the exclusion applies would require the court to focus on Baxter's conduct and whether it was intentional or accidental. The state court action will have this same focus. Such an overlapping issue would typically provide a basis for staying the coverage determination.[11] However, a prior assault conviction is present here. A jury convicted Baxter of fourth degree assault for the same events at issue in the underlying tort case. Recklessness is an essential element of that conviction. Baxter is therefore precluded from arguing that his actions were accidental and not reckless.[12] The pending appeal does not affect the preclusive effect of the conviction.[13]

---

may be shown either on the face of the complaint or through facts the insurer knew or could have reasonably ascertained that would bring an otherwise uncovered complaint within the policy's coverage.").

[11]*See Nat'l Chiropractic*, 23 F. Supp. 2d at 1122.

[12]*Lamb v. Anderson*, 147 P.3 736, 739 (Alaska 2006) (noting that a criminal conviction resulting from a jury can be introduced as "conclusive proof" "of the facts necessarily determined").

[13]*Pedersen v. Blythe*, 292 P.3d 182, 185 (Alaska 2012) (quoting *Wyatt v. Wyatt*, 65 P.3d 825, 831 (Alaska 2003)).

The court will therefore not be addressing the nature of Baxter's conduct in this declaratory judgment action.

The second Policy matter at issue in this action is whether Baxter was an insured under the Policy's terms. Whether Baxter was acting within his scope of employment when he approached Byers' truck on September 9, 2014, is relevant to this determination. The state court action also deals with this issue in relation to NGT's vicarious liability. However, here, NGT has already admitted in its answer and counterclaim that Baxter was in fact not acting within the scope of his employment.[14] That is, the parties do not have a dispute as to Baxter's scope of employment, and the court will simply apply this undisputed fact to determine whether Baxter was an "insured" under the Policy at the time of the relevant incident. Therefore, there is no risk of this court duplicating the state court's efforts when it analyzes Baxter's coverage under the Policy.

Lastly, the court's decision in this declaratory judgment action will address whether Ferns' alleged injuries were caused by the use of an insured automobile as required for coverage under the Policy. The requisite causal connection between the injury and the vehicle is something less than proximate cause in the legal sense, but something more than the vehicle being the location of the incident causing injuries.[15] There are three general factors to consider: 1) the extent of causation between the automobile and the injury; 2) whether an act of independent significance occurred, breaking the causal link between the use of the vehicle and the injuries inflicted; and 3) the type of use of the vehicle involved.[16] Applying the first factor requires the court to look at whether the vehicle was an active accessory to the incident.[17] The fact that a

---

[14] Doc. 16 at p. 6 (Affirmative Defense No. 4); Doc. 16 at p. 11 (¶ 14).

[15] *Shaw v. State Farm Mut. Auto. Ins. Cos.*, 19 P.3d 588, 591 (Alaska 2001).

[16] *Id.* at 592.

[17] *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 609 (Alaska 2011).

collision occurred and then caused the parties to fight, which then led to injuries, does not make the vehicles involved in the initial collision active accessories.[18] As to the third factor, coverage only applies to injuries resulting from a vehicle being used for its inherent transportation purpose.[19]

Baxter's conduct, which is the primary subject of the underlying tort case, will not be an issue in this court's vehicle use analysis. Regardless of whether Baxter acted intentionally or accidentally, it is undisputed that his truck was not adequately connected to the injuries Ferns sustained. Indeed, NGT is basing its coverage argument on the fact that Byers' truck was central to the underlying incident, and the court will be making determinations as to that truck's role in causing the alleged injuries under the applicable three-part test. The state case is not focused on Byers' truck's role in the incident. Therefore, no overlap will occur.

NGT argues that there could be litigation overlap because the state case is broad enough to include Byers' conduct as a basis for NGT's liability. Even assuming that is true, this court will not be making a determination about Byers' negligence, only about the role his truck played in relation to the injuries sustained by Fern and Baxter's conduct. NGT argues in its reply that there are still unknown facts to be discovered surrounding Byers' conduct and use of his truck that could arise in state court and potentially bring the state case within the policy's coverage and cause overlapping litigation and verdicts. The court disagrees that there are relevant undiscovered facts about Byers' role in the incident that could expand the scope of the underlying lawsuit to reach Byers' conduct and create overlapping litigation about his potential negligence. All the relevant witnesses testified in the state criminal proceeding, and there is nothing in their testimony to suggest that Byers drove the truck away while Ferns was standing on it, as NGT suggests. NGT relies on the fact that Baxter's original statement to the

---

[18] *Id.*

[19] *Id.*

investigating trooper was that he did not touch Ferns. However, during trial he admitted his original statement was not the truth, and that he did knock Ferns from behind, as other witnesses described, albeit unintentionally.[20] NGT also argues that Ferns does not remember getting hit and so it leaves open the possibility that Byers caused the fall by putting the truck in gear. That is not an accurate assessment of Ferns' testimony. He stated multiple times that he was struck from behind.[21] Thus, the court does not see the possibility of duplicative litigation surrounding Byers' conduct.

**B.    Settling all aspects of the controversy**

NGT argues that state court proceedings will be more likely to lead to a full resolution of this controversy because the state court case, with additional fact-finding as to Byers' conduct, will resolve the tort claims, which could lead to settlement on the coverage issue. This court, on the other hand, can only resolve the coverage aspects of the controversy. Again, the court concludes that no additional fact-finding is likely needed. All relevant witnesses have already testified as to the events at issue, and nothing suggests that there are some unknown facts regarding Byers' conduct that could end up settling the coverage issues. Therefore, the court sees no efficiency in waiting for the state case to conclude to move forward on the coverage issues.

**C.    Collateral estoppel issues**

NGT argues that this court's decision regarding UFCC's duty in relation to Ferns' tort suit against NGT and Baxter would cause unjust collateral estoppel issues for it in state court. NGT points to the issue of Baxter's scope of employment, arguing that if the court were to conclude Baxter was acting within the scope of his employment during the incident, Ferns could employ the offensive use of collateral estoppel against it in state court. However, here, it is undisputed that Baxter was not acting within the scope of his employment, and thus there will not be a contrary finding here. NGT also points

---

[20]Doc. 37-3 at pp. 19-20 (Baxter testimony at pp. 281-85).

[21]Doc. 37-2 at pp. 11, 13 (Ferns testimony at pp. 196, 197, 204, 205).

to the issue of Byers' conduct and notes that it will have to take inconsistent positions about this issue in the two cases—minimizing Byers' role in the incident in state court and maximizing his connection to the incident here to bring the scope of the complaint within the Policy's coverage—which could have a preclusive effect.  Again, the court notes that Byers' conduct is not at issue in the underlying complaint, and this declaratory judgment action will not determine whether Byers engaged in tortious conduct as part of its coverage determination.  Moreover, the court's application of the Policy's vehicle use provision does not require a determination of proximate cause.  Rather, the court simply looks at whether Byers' truck was an active accessory to Ferns' injuries, which, as noted above, is something less than proximate cause.  Since the issue is not identical, the court's decision as to the Policy's vehicle use provision will not have a preclusive effect on the underlying tort case.[22]

## V.  CONCLUSION

Based on the preceding discussion, NGT's motion for a stay at docket 23 is DENIED.

DATED this 20th day of August 2017.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT2

---

[22]*Latham v. Palin*, 251 P.3d 341, 344 (Alaska 2011).